

FILED

Oct 07 2020, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey Elftman
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Javier Thurman,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

October 7, 2020

Court of Appeals Case No.
19A-CR-3068

Appeal from the Tipton Circuit
Court

The Honorable Thomas Lett,
Judge

Trial Court Cause No.
80C01-1812-F1-536

**Brown, Judge.**

[1] Javier Thurman appeals his convictions for two counts of pointing a firearm as level 6 felonies and two counts of criminal recklessness as level 6 felonies. He raises one issue which we restate as whether his convictions violate Indiana's prohibition against double jeopardy. We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] At approximately 6:40 a.m. on December 19, 2018, Maynor Soto parked his truck at the Love's Truck Stop in Tipton County, placed his seat back, and closed his eyes to rest. At approximately that same time, Clark Culp stopped at the Love's Truck Stop, parked at a pump, left his car running and unlocked, and went inside the store.[1] He poured himself a coffee, walked to the register, and noticed Thurman exiting his vehicle. Culp exited the store and walked towards Thurman. Thurman pulled a firearm and pointed it at Culp's face and told him twice not to do anything stupid, and Culp stopped, immediately put his hands up, and said, "All right, man." Transcript Volume II at 191. Culp turned his body to the side, "heard the two rounds and then took off running after [he] was hit with the second round." *Id.*

[3] Soto heard a knocking on the window, opened his eyes, and Thurman asked him: "Can you give me a ride?" *Id.* at 202. Soto responded in the negative, and

---

[1] Counts III and V spell Culp's name as "Klark Culp," Appellant's Appendix Volume II at 7, 9. Count VII spells his name as "Clark Kulp." *Id.* at 60. The transcript spells his name as Clark Culp.

Thurman said: "No?" *Id.* at 203. Thurman pulled a gun, pointed it at Soto's face, and fired. Soto "tried to put the car in reverse to run away from him," and Thurman went around Soto's vehicle. *Id.* Thurman pointed the gun again at Soto and pulled the trigger twice but the gun "didn't go off." *Id.* Thurman then ran away. Law enforcement apprehended Thurman and discovered a .22 caliber semi-automatic handgun in his possession.

[4] Tipton County Sheriff's Major Mike Tarrh interviewed Thurman who admitted to entering Culp's vehicle to steal money, the shootings, pointing the gun at Culp and firing, pointing the gun in the general area of Soto, and firing a shot at the driver's side window of Soto's vehicle.

[5] On December 26, 2018, the State charged Thurman with: Count I, attempted murder of Culp as a level 1 felony; Count II, attempted murder of Soto as a level 1 felony; Count III, attempted robbery as a level 3 felony; Count IV, possession of a firearm by a serious violent felon as a level 4 felony; Count V, pointing a firearm at Culp as a level 6 felony; and Count VI, pointing a firearm at Soto as a level 6 felony. On October 16, 2019, the State charged Thurman with Count VII, criminal recklessness as a level 6 felony for performing an act while armed with a deadly weapon that created a substantial risk of bodily injury to Culp, and Count VIII, criminal recklessness as a level 6 felony for performing an act while armed with a deadly weapon that created a substantial risk of bodily injury to Soto. On October 21, 2019, the State filed a motion to

dismiss Count III, which the court granted. The State amended Counts I and II.[2]

[6] On October 22, 2019, the court held a jury trial. The State presented the testimony of multiple law enforcement officers, Culp, Soto, Douglas Hobbs, who witnessed Thurman shoot at Culp, and Deborah Stowers, who witnessed Thurman shoot at Soto. The State also introduced a video which showed Thurman raising his firearm as Culp approached, firing the first shot as Culp backed away, and firing the second shot as Culp ran. The jury found Thurman guilty of Count I, attempted murder as a level 1 felony, Count II, attempted murder as a level 1 felony, Count V, pointing a firearm as a level 6 felony, Count VI, pointing a firearm as a level 6 felony, Count VII, criminal recklessness as a level 6 felony, and Count VIII, criminal recklessness as a level 6 felony. The State moved to dismiss the remaining counts, and the court granted the motion.

[7] The court sentenced Thurman to forty years for Count I, thirty-five years for Count II, and two and one-half years each for Counts V, VI, VII, and VIII. The court ordered the sentences for Counts I and II to be served consecutively and the sentences for Counts V, VI, VII, and VIII to be served concurrent with Counts I and II.

---

[2] The amended information corrected the citation to the statute governing murder.

*Discussion*

[8] Thurman argues that his convictions for Counts V, VI, VII, and VIII violate Indiana's prohibition of double jeopardy. He asserts that "[b]ecause the actual evidence presented by the State, and considered by the jury, had a reasonable probability of being based upon the same facts for convictions on groups of Counts, specifically 1, 5, and 7 as a group and 2, 6, and 8 as a group, the convictions for Counts 5, 6, 7, and 8 are violative of Indiana's prohibition on double jeopardy and should be vacated." Appellant's Brief at 9.

[9] While this case was pending on appeal, the Indiana Supreme Court declared "we expressly overrule the *Richardson* [*v. State*, 717 N.E.2d 32 (Ind. 1999),] constitutional tests in resolving claims of substantive double jeopardy." *Wadle v. State*, 151 N.E.3d 227, ___ (Ind. 2020). In doing so, the Court observed that the subsequent application of the statutory elements test and the actual evidence test had "proved largely untenable, ultimately forcing the Court to retreat from its all-inclusive analytical framework." *Id.* at ___.

[10] The Court held that "our Double Jeopardy Clause should focus its protective scope exclusively on successive prosecutions for the 'same offense'" and that this conclusion "does not suggest that defendants enjoy no protection from multiple punishments in a single proceeding; it does, however, shift our analysis to other sources of protection—statutory, common law, and constitutional." *Id.* at ___.

[11] The Court held:

When multiple convictions for a single act or transaction implicate two or more statutes, we first look to the statutory language itself. (The mere existence of the statutes alone is insufficient for our analysis.) If the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy.

If, however, the statutory language is not clear, a court must then apply our included-offense statutes to determine statutory intent. *See Collins v. State*, 645 N.E.2d 1089, 1093 (Ind. Ct. App. 1995) (noting that, to resolve a claim of substantive double jeopardy, our included-offense statutes guide judicial "analysis of legislative intent"), *aff'd in part*, *vacated in part on other grounds*, 659 N.E.2d 509 (Ind. 1995)[, *reh'g denied*]. Under Indiana Code section 35-38-1-6, a trial court may not enter judgment of conviction and sentence for both an offense and an "included offense."

* * * * *

If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy. If, however, one offense is included in the other (either inherently or as charged), the court must then look at the facts of the two crimes to determine whether the offenses are the same. *Richardson*, 717 N.E.2d at 67 (Boehm, J., concurring). *See also Bigler v. State*, 602 N.E.2d 509, 520 (Ind. Ct. App. 1992) (noting that "analysis of legislative intent" in Indiana, unlike the federal *Blockburger* test, "does not end with an evaluation and comparison of the specific statutory provisions which define the offenses")[, *reh'g denied*, *trans. denied*]. This brings us to the second step of our inquiry.

* * * * *

Once a court has analyzed the statutory offenses charged, it must then examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial. *Bigler*, 602

N.E.2d at 521. Based on this information, a court must ask whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010), [*reh'g denied*,] *cited with approval by Hines* [*v. State*, 30 N.E.3d 1216, 1219 (Ind. 2015)].

If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, "included" in the other. But if the facts show only a single continuous crime, and one statutory offense is included in the other, then the prosecutor may charge these offenses only as alternative (rather than as cumulative) sanctions. The State can rebut this presumption only by showing that the statute—either in express terms or by unmistakable implication—clearly permits multiple punishment.

*Id.* at ___ (footnotes omitted).

[12]     The Court also stated:

To reiterate our test, when multiple convictions for a single act or transaction implicate two or more statutes, we first look to the statutes themselves. If either statute clearly permits multiple punishment, whether expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy. But if the statutory language is not clear, then a court must apply our included-offense statutes to determine whether the charged offenses are the same. *See* I.C. § 35-31.5-2-168. If neither offense is included in the other (either inherently or as charged), there is no violation of double jeopardy. But if one offense is included in the other (either inherently or as charged), then the court must examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial. If, based on these facts, the defendant's actions were "so compressed in terms of time, place,

singleness of purpose, and continuity of action as to constitute a single transaction," then the prosecutor may charge the offenses as alternative sanctions only. But if the defendant's actions prove otherwise, a court may convict on each charged offense.

*Id.* at ___.

[13] The offenses under Counts I and II, attempted murder, are governed by Ind. Code § 35-42-1-1 and Ind. Code § 35-41-5-1. Ind. Code § 35-42-1-1 provides that "[a] person who . . . knowingly or intentionally kills another human being . . . commits murder, a felony." Ind. Code § 35-41-5-1 provides that "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime" and that "an attempt to commit murder is a Level 1 felony." As for Counts V and VI, pointing a firearm, Ind. Code § 35-47-4-3 provides that "[a] person who knowingly or intentionally points a firearm at another person commits a Level 6 felony." With respect to Counts VII and VIII, criminal recklessness, Ind. Code § 35-42-2-2 provided that "[a] person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness," and "[t]he offense of criminal recklessness as defined in subsection (a) is . . . a Level 6 felony if . . . it is committed while

armed with a deadly weapon . . . ."[3] We cannot say that these statutes permit multiple punishments, either expressly or by unmistakable implication.

[14] With no statutory language clearly permitting multiple convictions, we analyze the offenses charged under our included-offense statutes. *See Wadle*, 151 N.E.3d at ___. ("With no statutory language clearly permitting multiple convictions, we now analyze the offenses charged under our included-offense statutes."). Ind. Code § 35-38-1-6 provides that "[w]henever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense." Ind. Code § 35-31.5-2-168 provides:

> "Included offense" means an offense that:
>
> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

---

[3] Subsequently amended by Pub. L. No. 184-2019, § 11 (eff. July 1, 2019).

[15] As noted, the Indiana Supreme Court held that "[i]f neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy" and that "[i]f, however, one offense is included in the other (either inherently or as charged), the court must then look at the facts of the two crimes to determine whether the offenses are the same." *Wadle*, 151 N.E.3d at ___.

[16] With respect to Counts I, V, and VII, we note that Count I, attempted murder, alleged that Thurman "did attempt to intentionally kill . . . [] Culp, by acting with the culpability required for commission of the crime, engaged in conduct that constitutes a substantial step toward commission of the crime, to-wit: pointed a loaded handgun at []Culp and shot him, striking him in the right leg." Appellant's Appendix Volume II at 65. Count V, pointing a firearm as a level 6 felony, alleged that Thurman "knowingly or intentionally pointed a firearm at another person, to-wit: at [] Culp." *Id.* at 9. Count VII, criminal recklessness as a level 6 felony, alleged that Thurman was "a person who recklessly, knowingly, or intentionally perform[ed] an act that create[d] a substantial risk of bodily injury to another person, and [was] committed while armed with a deadly weapon, to-wit: to [Culp], at Loves Truck Stop in Tipton County, while armed with a .22 caliber firearm." *Id.* at 60.

[17] Count II, attempted murder, alleged that Thurman "did attempt to intentionally kill another human being, to-wit: [] Soto, by acting with the culpability required for commission of the crime, engaged in conduct that constitutes a substantial step toward commission of the crime, to-wit: pointed a loaded handgun at []

Soto and pulled the trigger, striking the driver's side window of the truck Soto was sitting in." *Id.* at 66. Count VI, pointing a firearm as a level 6 felony, alleged that Thurman "knowingly or intentionally pointed a firearm at another person, to-wit: at [] Soto." *Id.* at 10. Count VIII, criminal recklessness as a level 6 felony, alleged that Thurman was "a person who recklessly, knowingly, or intentionally perform[ed] an act that create[d] a substantial risk of bodily injury to another person, and [was] committed while armed with a deadly weapon, to-wit: to [] Soto, at Loves Truck Stop in Tipton County, while armed with a .22 caliber firearm." *Id.* at 60.

[18]     We conclude here that the offense of criminal recklessness may constitute an included offense of pointing a firearm and that the offenses of criminal recklessness and pointing a firearm may constitute included offenses of attempted murder. *See*, *e.g.*, *Bracksieck v. State*, 691 N.E.2d 1273, 1275 (Ind. Ct. App. 1998) ("Under these circumstances, pointing a firearm, as a class D felony, and criminal recklessness, as a class D felony, are the same offense for double jeopardy purposes and the defendant cannot be convicted of both offenses without violating both state and federal prohibitions against double jeopardy."). Thus, we look at the facts of the crimes to determine whether the offenses are the same.

[19]     In examining "the facts underlying those offenses, as presented in the charging instrument and as adduced at trial," *Wadle*, 151 N.E.3d at ___, we note that the charging informations for Counts I, V, and VII, do not indicate that the facts of the crimes are different. Nor do the charging informations for Counts II, VI,

and VIII indicate that the facts of the crimes are different. We also cannot say that the facts adduced at trial demonstrate that the offenses were different.

[20] The prosecutor did not delineate which acts related to which specific count. During closing argument, the prosecutor stated:

> He pulls that gun out of his pocket with no warning, no hesitation, turns with total disdain for the life and safety of Clark Culp, points the gun at him, and pulls the trigger. He doesn't pull once, he pulls it twice. He doesn't point at his feet. He points the gun at his face.
>
> * * * * *
>
> And I want you to count on that video how many seconds he's got that gun extended and trained level at Clark Culp. Four seconds. I thought his goal was to get him stopped from walking up on him. Four seconds. And in deliberations I hope you will watch this video and have staff help you run the video at half speed, because when you run it at half speed, you can see the muzzle flashes. Two muzzle flashes. In the first muzzle flash [Culp] is walking towards this man, out comes the gun, he lands on his left foot, pushes off, slides back, and then runs like hell. On the second slide back, muzzle flash number one. Muzzle flash number two, one, two, three, four running. On the fourth stride the second shot. [Culp's] back is almost completely facing him.
>
> You know what that's called? Called specific intent to kill. It's called a substantial step. It's called attempted murder. Don't walk up on me. Please don't walk up on me. He's not walking up on him. He's running for his life in the opposite direction, and he's still trying to mow him down. Trying to mow him down. That's attempted murder. That's intent to kill.

Transcript Volume III at 103-104. The prosecutor also stated that Thurman's "first reaction to this defenseless man [Culp] is to pull it out and immediately point it right at his face and then start firing." *Id.* at 107-108.

[21] The prosecutor played the video of Thurman's shooting at Culp and stated:

> Now, what I want to share with you is this because you can use these numbers when you're deliberating in this case. You've seen [Culp] approaching [Thurman] at this point in time. You're going to see that at 6:44:29, using this counter, that he pulls the gun out of that jacket pocket and points it right at [Culp]. You're going to see that immediately [Culp's] hands go up, he goes into retreat mode, and runs for the front of the store. We're going to try to play this at half speed. At half speed you're going to see that he's taken two steps back, first muzzle flash, he runs and he gets almost all the way up here to the sidewalk when you see the second muzzle flash. At 6:44:31 after [Culp] has taken two steps backward, you see that first muzzle flash and then at 6:44:32 when [Culp is] in a full sprint, that's when you're going to see the second muzzle flash. . . . What you see in this four seconds is Attempted Murder without question whatsoever. What we know happened after this four seconds over here in the west, southwest corner of the parking lot is Attempted Murder.

*Id.* at 114-115. Our review of the video in State's Exhibit 14 indicates that the timing mentioned in the prosecutor's closing argument is correct and that Thurman raised his firearm and fired two shots at Culp four seconds before lowering his firearm and running away.

[22] We also note Culp testified that Thurman pulled a firearm on him, he immediately put his hands up, said "All right, man," turned his body to the side, and "then heard the two rounds and then took off running after I was hit

with the second round." Transcript Volume II at 191. When asked where the gun was pointed when Thurman raised the gun, he answered: "The weapon was pointed at my face." *Id.* Hobbs testified that he witnessed the shooting and testified that "the gun was already out as I turned around," "there was a bam, bam," Thurman took off running, and "the guy that was shot at, he had went and ran behind a truck." *Id.* at 248.

[23] Because Thurman's actions related to Culp were so compressed in terms of time, place, singleness of purpose, and continuity of action, we consider them one continuous transaction. *See Wadle*, 151 N.E.3d at ___ ("Because Wadle's actions were 'so compressed in terms of time, place, singleness of purpose, and continuity of action,' we consider them 'one continuous transaction.'") (citing with a *cf.* designation *Walker*, 932 N.E.2d at 737-738 (concluding that the doctrine did not apply because each statutory offense—burglary, robbery, and criminal confinement—was a "distinct chargeable crime" with multiple victims involved, not "an offense and a lesser included offense"); *Firestone v. State*, 838 N.E.2d 468, 472 (Ind. Ct. App. 2005) (holding that convictions for rape and criminal deviate conduct did not violate the doctrine because the defendant "clearly committed two different offenses at different times")).

[24] With respect to Soto, the prosecutor stated:

> Now, what about Maynor Soto? [Soto] pulls into the truck stop that morning and he parks. He's going to go in and get a cup of coffee but the first thing he does, he wants to take a nap. He's tired. He rests his eyes. Imagine sitting there and he shows up. And we know he did show up. He's told you he did. Debbie

> Stowers told you she saw him over there train that gun on [Soto's] vehicle not once, but twice. . . . And he gets over there and he asks for a ride he says, probably demands a ride. And [Soto] says no. And again, the response is the gun immediately comes out and immediately pointed right at his face. And if you'll recall [Soto's] testimony, he didn't pull it out and point the gun and say, "Get out of there, I'm taking your SUV." He fired. . . . [Thurman] doesn't run like heck. He runs to the front of the vehicle while [Soto's] trying to slide down as low as he can so he's not a dead man, and he fires again. And [Soto] says it was right at him.

*Id.* at 108-109. Based upon the record, we similarly conclude that Thurman's actions related to Soto were so compressed in terms of time, place, singleness of purpose, and continuity of action, that they constitute one continuous transaction.

[25] To the extent the State asserts that Counts II, VI, and VIII, the charges related to Thurman's acts against Soto, pertain to different acts, we note that the prosecutor made no temporal distinction in either the charging information or the jury instructions. *See Wadle*, 151 N.E.3d at ___ ("[P]rosecutors cannot avoid double jeopardy 'by the simple expedient of dividing a single crime into a series of temporal or spatial units.' *Brown v. Ohio*, 432 U.S. 161, 169, 97 S. Ct. 2221, 53 L.Ed.2d 187 (1977). *Accord Jackson v. State*, 14 Ind. 327, 328 (1860) ('The state cannot split up one crime and prosecute it in parts.'). Even if we could distinguish Wadle's acts to find two separate offenses, the prosecutor made no temporal distinction in either the charging instrument or the jury instructions . . . .").

Under these circumstances, we conclude that Count V, pointing a firearm at Culp as a level 6 felony, and Count VII, criminal recklessness, are included offenses of Count I, attempted murder of Culp. We also conclude that Count VI, pointing a firearm at Soto as a level 6 felony, and Count VIII, criminal recklessness, are included offenses of Count II, attempted murder of Soto.

For the foregoing reasons, we affirm Thurman's convictions for attempted murder under Counts I and II, vacate his convictions for pointing a firearm as level 6 felonies under Counts V and VI and his convictions for criminal recklessness as level 6 felonies under Counts VII and VIII, and remand for the trial court to enter a sentence consistent with this opinion.[4]

Affirmed in part, reversed in part, and remanded.

Robb, J., and Crone, J., concur.

---

[4] The reversal of Thurman's convictions under Counts V through VIII does not impact his aggregate sentence.